IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ELISEO ACOSTA,<br><br>Defendant. | CIV. NO. 21-1435 (SCC) |

**OPINION AND ORDER**

The Securities and Exchange Commission ("SEC") brings this lawsuit against Eliseo Acosta, claiming that he violated the Securities Exchange Act of 1934 by selling securities to investors without registering as a broker dealer or associating with a registered dealer. The SEC has moved the Court to approve the parties' consent decree and enter the resulting judgment. The consent decree grants the SEC injunctive relief and a right to request disgorgement and a civil penalty.

We review consent decrees to ensure that they are reasonable and both procedurally and substantively fair. *City*

*of Bangor v. Citizens Commc'ns Co.*, 532 F.3d 70, 93 (1st Cir. 2008); *see also SEC v. Citigroup Glob. Mkts.*, 752 F.3d 285, 296–97 (2d Cir. 2014) ("[W]hen the district judge is presented with a proposed consent judgment, [s]he is not merely a 'rubber stamp.'" (quoting *SEC v. Levine*, 881 F.2d 1165, 1181 (2d Cir. 1989))). And where, as here, the consent decree includes injunctive relief, we must ensure that the proposed injunction would not do a disservice to the public interest. *Citigroup*, 752 F.3d at 296–97. Moreover, because the SEC is an executive agency, we defer to how it wishes to resolve this case. *Conservation Law Found. of New Eng., Inc. v. Franklin*, 989 F.2d 54, 58 (1st Cir. 1993); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[T]he district court must refrain from second-guessing the Executive Branch."). With this framework in mind, we turn to our analysis.

## I. Reasonableness

Reasonableness is a multi-faceted concept. As a general matter, we may approve a consent decree if "(1) it 'springs from and serves to resolve a dispute within [our] subject-

matter jurisdiction'; (2) it 'comes within the general scope of the case made by the pleadings'; and (3) furthers the objectives upon which the complaint was based." *Conservation Law Found.*, 989 F.2d at 59 (quoting *Local No. 93, Int'l Ass'n of Firefighters v. Cleveland*, 478 U.S. 501, 525–26 (1986)). We look as well to the "basic legality of the decree" and whether its terms, including its enforcement mechanism, are clear. *Citigroup*, 752 F.3d at 294–95.

We begin with whether the consent decree springs from and attempts to resolve a dispute within our subject-matter jurisdiction. Our subject-matter jurisdiction includes actions arising under federal law. 28 U.S.C. § 1331. The essence of the SEC's complaint against Acosta is that he violated federal law, *i.e.*, the Securities Exchange Act of 1934 ("Act"). Docket No. 1, pg. 1. And the consent decree attempts to rectify this violation through injunctive relief, disgorgement, and a civil penalty. *See* Docket No. 6-2. The consent decree, therefore, springs from and attempts to resolve a dispute within our subject-matter jurisdiction.

We turn next to whether the consent decree is within the scope of the case that the SEC's complaint makes against Acosta and whether it furthers the objectives upon which the complaint is based. As we noted earlier, the essence of the SEC's complaint is that Acosta has violated the Act by selling securities to investors without registering as a broker dealer or associating with a registered dealer. The consent decree enjoins him from doing so again and includes disgorgement and a civil penalty to return his ill-gotten gains and penalize him for engaging in this conduct, respectively. Docket No. 6-2. It, therefore, is within the scope of the case that the SEC makes against Acosta in its complaint. Moreover, the consent decree furthers the complaint's objectives. The Act's purpose is to regulate securities, and one of the ways it does so is by prohibiting individuals from selling securities if they are not registered broker dealers or associated with one. 15 U.S.C. § 78o(a)(1). The consent decree furthers these objectives by enjoining Acosta from violating the Act again and by holding him financially accountable for his prior violations.

We turn now to the basic legality of the consent decree and whether its terms are clear. The consent decree provides for an injunction, disgorgement, and a civil penalty. The Act allows the SEC to seek these remedies and allows us to grant them. *See* 15 U.S.C. § 78u(d). So the consent decree is legal.

Federal Rule of Civil Procedure 65 guides our analysis of whether the proposed injunction's terms are sufficiently clear. When we grant an injunction, Rule 65(d)(1) requires us to: (1) "state [our] reasons" for it, (2) "state its terms specifically," and (3) "describe in reasonable detail" the enjoined acts. FED. R. CIV. P. 65(d)(1). We grant the proposed injunction because the parties have agreed to it, the SEC made the policy choice to include it as part of the resolution of this case, and it is reasonable and fair. The proposed injunction, moreover, states its terms with sufficient specificity and describes in reasonable detail the acts restrained such that Acosta can understand what conduct is enjoined: He is enjoined from violating the Act by selling securities without registering as a broker dealer or associating with a registered dealer. Docket

No. 6-1, pgs. 1–2; *see also Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 12 (1st Cir. 2018) ("An 'injunction must simply be framed so that those enjoined will know what conduct the court has prohibited.'" (quoting *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981))).

As for its other terms, the consent decree clearly states that the SEC may later move the Court for disgorgement and a civil penalty. Docket No. 6-2, pg. 3. It also clearly states that any disgorgement, civil penalty, and interest are non-dischargeable in bankruptcy. *Id.* at 5–6. Moreover, it provides that we will retain enforcement jurisdiction. *Id.* at 6. We, thus, conclude that the consent decree's terms are clear.

## II.  PROCEDURAL FAIRNESS

Procedural fairness looks to "the negotiation process," attempting to "gauge its candor, openness, and bargaining balance." *City of Bangor*, 532 F.3d at 96. There is no evidence that the SEC has not "conducted its negotiations forthrightly and in good faith." *Cannons Eng'g Corp.*, 899 F.2d at 86. Indeed, Acosta signed before a notary public a statement

acknowledging that he "enter[ed] into this [c]onsent [agreement] voluntarily" and that the SEC did not make any "threats, offers, promises, or inducements" to secure his consent. Docket No. 6-2, pgs. 3–4. We, therefore, find that the consent decree is procedurally fair.

### III. SUBSTANTIVE FAIRNESS

Substantive fairness turns on "corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *United States v. Comunidades Unidas Contra la Contaminación*, 204 F.3d 275, 281 (1st Cir. 2000). We give deference to the SEC's decision that this consent decree is substantively fair, and we conclude as well that it is. For the consent decree holds Acosta accountable for his wrongs by enjoining him from committing them again and threatening him with disgorgement and a civil penalty.

### IV. PUBLIC INTEREST

Where a consent decree includes injunctive relief, we must ensure that it would not do a disservice to the public interest. *Citigroup*, 752 F.3d at 296–97. And we must defer to the SEC's

policy choice that an injunction is in the public's best interest. *Cannons Eng'g Corp.*, 899 F.2d at 84. We see no reason to believe that this consent decree will harm the public. Indeed, it protects the public from Acosta violating the Act in the future.

### V. CONCLUSION

In sum, the Court **GRANTS** the SEC's motion to approve the parties' consent decree and enter the resulting judgment (Docket No. 6).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of December, 2021.

    S/ SILVIA CARREÑO-COLL
    UNITED STATES DISTRICT COURT JUDGE